CALEDONIA,
*March*,
1843.

Kelsey
*v.*
Glover.

ROBERT KELSEY *v.* TOWN of GLOVER.

In an action against a town, to recover damages occasioned by the insufficiency of a road, it is a question of fact, or a mixed question of law and fact, whether the road was out of repair, — as, also, whether the town was justly chargeable with neglect of duty, — whether the plaintiff's injury was caused by such want of repair, — and whether the plaintiff used proper exertions to avoid the injury.

It is the duty of a town, in the construction and repair of roads, to provide for the reasonable safety of travellers in reference to such accidents as may be expected to happen on such roads.

THIS was an action on the case, brought to recover for damages alleged to have happened to the plaintiff's property, by reason of the insufficiency and want of repair of a highway in Glover. Plea the general issue, and trial by jury. The case was brought into this court upon the following bill of exceptions :

The plaintiff, in support of the issue, on his part, adduced evidence tending to prove, that, at the time mentioned in his declaration, he was, with his team, consisting of a span of horses and a double sleigh, travelling along on the public highway described in his declaration, within said town of Glover ; that one Locke was driving a single sleigh just before him, the said Kelsey ; that the said Kelsey was driving his team up a short hill, on said highway, close behind the said Locke, and that a frightened horse, harnessed in a single sleigh, without a driver or any person in said single sleigh, was furiously running on said highway towards the said Locke and the said Kelsey ; that the said Locke turned his horse partly out of the road and said frightened horse passed swiftly by him, and, in passing the team of the said Kelsey, thrust one of the shafts of said single sleigh, to which he was attached as aforesaid, into the side of the said Kelsey's near horse, just forward of his hind legs, and killed him.

The plaintiff, in further support of said issue, adduced evidence tending to prove, that two tree tops lay beside said highway nearly opposite each other, and that his sleigh was on said highway, between said tree tops, when said frightened horse came upon him, and that some part of the tree top on the east side of said highway, the side on which said

frightened horse attempted to pass, projected so far into the road, and over the road, and so obstructed the passage along the side of said highway, that said frightened horse was turned upon and against the plaintiff's horse, and killed him in the manner before stated.

The plaintiff produced further evidence, tending to prove that said tree tops had been permitted to lay beside said highway for some two or three months before the injury complained of in the plaintiff's declaration, happened ; and that there was not room enough between said tree tops for two teams to pass each other.

The defendants, in support of said issue on their part, adduced evidence tending to prove that there was sufficient room in the road between said tree tops on said highway for two loaded teams to pass each other without difficulty, and in perfect safety ; and that a number of loaded teams did, just before, and just after, said injury to plaintiff's horse, pass each other on said highway, between said tree tops, without any inconvenience, difficulty, or trouble.

The defendants adduced further evidence tending to prove that the plaintiff's team had passed said tree tops up the hill about twenty or twenty-four feet, at the time the frightened horse came upon the plaintiff's horse, and that the plaintiff did not attempt to turn his horse out of the travelled path on said highway, when he saw the frightened horse running towards him, and when the said Locke turned out, although there was sufficient room to turn out, and no obstruction to prevent it.

The defendants further adduced evidence tending to prove that, when the injury happened, the plaintiff's team was standing still in the travelled path on said highway, and that on the east side of the highway, against the plaintiff's team, and along the side of it, there was unobstructed room sufficient for a yoke of oxen attached to a loaded cart to pass by and come into the road above the aforesaid tree tops, and that on the west side of the highway, opposite plaintiff's team, there was room sufficient for any loaded team to turn out of the travelled path without trouble or difficulty.

The defendants adduced further evidence tending to prove that their said road or highway was sufficient, and in no way out of repair, and that the plaintiff's horse was killed by un-

avoidable accident; and that said tree tops, in no way or manner, contributed to produce the injury; and further, that said tree tops, before the injury happened, had been well and sufficiently cut out and removed from the road.

No further testimony was adduced in the case on either side. The counsel for the defendants contended, and requested the court to charge the jury, as follows, viz:

1. If the jury find that plaintiff's team was passing along said highway between said tree tops, when said frightened horse came upon him and his horse, and that there was sufficient room in the road, between said tree tops, for two loaded teams to pass each other in safety, without difficulty or inconvenience, their verdict should be for the defendants.

2. That towns are not liable for damages happening upon their roads and bridges, when they are kept in such a state of repair as to enable persons, in the exercise of common and ordinary prudence, to travel upon and over them with their teams and carriages in safety; and that the plaintiff cannot recover in this case, if the jury find that the highway in question, where the injury happened, was in such a state of repair as to enable persons, with teams under their control, to pass by other teams, on said road, under the control of drivers, without inconvenience, and to pass along safely upon said highway.

3. If the jury find that the plaintiff had passed said tree tops some twenty feet or more, and that his team was standing still, in the travelled path on said highway, when said frightened horse came upon him and his horse, and that there was room sufficient on either side of plaintiff's team for said frightened horse and cutter, or any other team, to pass without running upon and against plaintiff's team, he cannot recover in this action.

4. That a person travelling upon a public highway, with his team of horses, connot recover of the town for an injury inflicted upon his horses, by a frightened horse, breaking from his driver, and running upon, and injuring such traveller's horses, or either of them, provided there is no obstruction on said highway, to prevent such person, travelling with his team of horses as aforesaid, from turning out of the travelled path of said road, for the purpose of giving such frightened horse a chance to pass by him.

Whereupon the court refused to charge the jury, as requested by the counsel for defendants, and charged as follows, to wit : —

The court instructed the jury that if the road, at the place where the injury happened, was, by the defendants, suffered to remain out of repair, and insufficient for the ordinary safety of travellers and their teams; that this insufficiency or want of repair produced the injury to plaintiff's horse ; and that plaintiff himself was guilty of no want of ordinary care and prudence, in the conduct of his team, or in attempting to escape the injury, the plaintiff was entitled to recover the value of his horse. ·

In further illustrating these several propositions, the court remarked to the jury, that towns were bound to build and repair their roads, in such a manner that they would be reasonably safe for the amount and kind of travel which might fairly be expected on them, and to enable travellers to be reasonably safe from the consequences of such accidents as might be justly expected, occasionally, to occur on such roads, i. e. such accidents as might be expected always to occur on such roads, at short intervals, or every few years, and which might be expected at one time as well as another. That it did not follow, of course, that because two loaded teams with care, might pass each other with safety, that the road was not out of repair at the the point of the tree tops before mentioned. And further, that although the road was sufficient for ordinary travelling, with kind horses, and good harnesses, and skilful drivers, yet, if the road, by reason of those tree tops, was unsafe and insufficient with reference to such teams, and such accidents, as might reasonably be expected to be found on such a road, and the accident in this case was of that character, then this point of the case would be made out, if this insufficiency and want of repair had been suffered to remain an unreasonable time.

On the second point, that if the accident occurring in this case, of the frightened horse breaking from his driver and running furiously along the highway, was of the class of accidents above defined, and the tree top on the east side of the road, operated to produce the injury to plaintiff's horse, by crowding the frightened horse upon plaintiff's horse, and that, had that been sufficiently cut away, i. e. as far as it was the

defendant's duty to cut it away, as above defined, the injury would not have happened, then this point of the case was made out.

On the third point, that if the plaintiff did all that a man of common prudence and skill could be expected to do, under the circumstances, to escape the consequences of the accident, then this point was made out, notwithstanding there was more space on the west side of his sleigh, where he might have turned out his horses and sleigh, had he had sufficient time and warning for that purpose.

To all which the defendants, excepted. The defendants interposed a motion in arrest of judgment, which was over-ruled by the court; to which the defendants also except-ed.

*Upham*, for defendants.

The exceptions in this case were taken to the charge of the judge in the court below, and also to his refusal to charge as requested by the defendants' counsel.

1. Towns, I admit, are answerable for " any special dam-ages which shall happen to any person, his team, carriage, or other property, by means of the insufficiency or want of re-pairs of any highway or bridge," which they are bound to support.

What is the legal measure of duty on the part of a town to the public, in relation to its roads and bridges? It is, I insist, nothing more nor less than this: a town is bound to keep its roads and bridges in such a state of repair as to ren-der them reasonably safe for travellers.

Common and ordinary care and diligence in their construc-tion and preservation is all that the law requires. *Towns-end* v. *The Susquehannah Turnpike Co.* 6 Johns. R. 90; *Richardson* v. *Royalton and Woodstock Turnpike Co.* 5 Vt. R. 580; 1 Swift's Dig. 552.

If, therefore, the treetops in question had been cut out, so as to leave room sufficient between them for loaded teams to pass each other without difficulty, the defendants were not in fault, and the road was reasonably safe for travellers, and the jury should have been so instructed.

2. Towns are not liable for " special damages" happening upon their roads and bridges, when they are kept in such a

state of repair as to enable persons, in the exercise of common and ordinary prudence, to travel upon and over them with their teams and carriages in safety. 6 Pick. R. 189. The plaintiff's horse was not injured by the tree tops, nor did the running horse take fright at them and break away from his driver. The loss was the result of accident, and that alone. Suppose the frightened horse had been killed by running onto the plaintiff's horse, would the town have been liable for damages? I apprehend not. If the plaintiff had alleged and proved that the running horse broke from his driver in consequence of the insufficiency of the road, and run onto his horse and killed him, he would have made a case of less doubt than the one we have under consideration.

3. The only defect in the road complained of in the declaration, was the position of the tree tops. Now if the plaintiff had passed the tree top some twenty feet or more when the injury happened, and there was a free and unobstructed passage on both sides of his team sufficient for him to have turned out of the travelled path of the road, or for the frightened horse to have passed by him, the verdict most certainly should have been for the defendants, and the jury should have been so charged.

The frightened horse could not have been crowded by the tree top on the east side of the road onto the plaintiff's horse, if the plaintiff had passed it twenty feet or more when the injury happened.

4. If the plaintiff, when he discovered the frightened horse running furiously towards him, stopped his horse in the middle of the travelled path of the road, and made no effort to turn out, when there was no obstruction to prevent it, he took the risk of injury upon himself, and the defendants are not liable, and the jury should have been so instructed. If the running horse was not frightened and put in motion by the insufficiency of the road, how can the plaintiff recover for damages occasioned by his running? In no way, we apprehend.

*Barlett, Fletcher*, and *Skinner*, argued for the plaintiff, and, in support of the charge against the several objections urged by the defendant's counsel, cited Hawkin's P. C. 76, 147 ; 10 Petersd. 236 ; *Noyes* v. *Morristown*, 1 Vt. R. 353 ;

*Richardson* v. *Royalton & Woodstock T. Co.* 5 Vt. R. 580 ; *Lester* v. *Pittsford,* 7 Vt. R. 158 ; *Hunt & wife* v. *Pownal* 9 Vt. R. 411 ; *Noyes* v. *White River T. Co.* 11 Vt. R. 531.

The opinion of the court was delivered by

ROYCE, J. — The evidence on the part of the defendants tended to show, that the tree tops had been cut away from the central part of the road, so that loaded teams could, and did, pass each other, between those tops, without inconvenience ; that the plaintiff had passed the tree tops a distance of at least twenty feet when the injury happened ; and that his team was then standing still in the travelled path, with sufficient room on either side for another team to have passed him in safety. Was it the duty of the court to instruct the jury, that upon proof of these facts the defendants were entitled to a verdict ? It has long been the practical and received doctrine in actions of this sort, that whether the road was out of repair under circumstances to place the town in fault, — whether the injury happened from that cause, — and whether the party injured conducted with due care and skill, — are questions of fact, or mixed questions of law and fact, to be determined by the jury under proper instructions from the court. The evidence may, indeed, disclose facts of so decisive a character, as to justify the court in directing a verdict upon the mere finding of those facts. But in ordinary cases, (I mean those which admit of doubt as to the just liability of the town) such a variety of facts and circumstances will usually require to be weighed, that the jury must be left, upon due consideration of the whole matter, to draw the ultimate conclusion.

Assuming, then, that there was a clear space between the tree tops, of sufficient width for teams to pass each other, yet the size and position of those tops might be such as to give the passage a more contracted appearance, especially, if seen even from a short distance, or in a diagonal or transverse direction. The verdict has established the fact that they caused the frightened horse to crowd in upon the plaintiff's team. It is contended, however, that the road was not out of repair, within the purview of the statute, and that the plaintiff's loss should be referred to that class of casualties for which there is no remedy. The statute prescribes no

definite standard of sufficiency in the construction of a road, nor what shall constitute a proper state of repair. It is obvious that this could not be done. The standard should vary as applied to different roads, and even to the same road at different periods of time. I am aware of no rule on the subject, which indicates with greater accuracy the just obligations of a town, than that contained in the second paragraph of the charge. The object to be secured is the reasonable safety of travellers, considering the amount and kind of travel which may fairly be expected on the particular road. There are cases in which the court will take it upon themselves to judge, whether this object has been sufficiently attained; as was done in the case of *Halley* v. *Winooski Turnpike Co.* 1 Aik. 74. But in general the inquiry is such as to fall more properly within the province of the jury. And we are satisfied that this case was not entitled to be treated as an exception.

It being thus settled by the jury, in the exercise of their appropriate powers, and under proper instructions from the court, that the state of the tree tops constituted a want of repair in the road, for which the town was justly chargeable with neglect, and that the injury complained of was occasioned by such want of repair, it follows that the distance from the tree tops, at which the injury happened, becomes of no importance. Its only tendency was to render a fact improbable, which the jury have, nevertheless, found.

In regard to the fact that the plaintiff's team was standing still in the travelled path when the injury happened, it is sufficient to remark, that the want of ordinary care and prudence on the part of the plaintiff is conclusively negatived by the verdict.

Enough has been said to show that the plaintiff is legally entitled to retain his judgment. But a proposition implied in the defendant's second request should receive some further consideration. The proposition is,—"that towns are not liable for damages happening upon their roads and bridges, when they are kept in such a state of repair as to enable persons, in the exercise of common and ordinary prudence, to travel upon and over them with their teams and carriages in safety." This would seem to exclude all liability resulting from accidents on the road. But no such universal exemption, on the ground of accident, has ever been recog-

*Margin:* CALEDONIA, March, 1843.

Kelsey
*v.*
Glover.

nized in this state. On the contrary, it has long been considered, and repeatedly adjudged, that a duty does exist, which binds the town or corporation to provide reasonable security in reference to such accidents as may be expected to happen. 1 Aik. 74, above cited ; *Hunt & wife* v. *Pownal*, 9 Vt. R. 411. In some cases this obligation is strong and manifest, as in that of a high bridge, a dangerous precipice, and the like ; whilst in others it is less urgent and scarcely perceptible. The term *accident* may be employed in these cases to signify the primary or the proximate cause of the injury. And to entitle a party to claim redress in such a case, the accident, be it of either description, must not appear to have been occasioned by any fault of his ; whilst on the other hand, it will be sufficient to show, that the accident in either sense is justly imputable to some fault of the town. Again, it is not required that the fault of either party should alone have occasioned the accident, or produced the injury. If the plaintiff's fault has but contributed with other means, it will defeat his remedy ; and if he is without fault the town may be subjected, though the want of repair may have only co-operated with other causes in effecting the injurious result. 9 Vt. R. 411, before cited.

Upon the whole, though we may doubt as to some of the conclusions of fact which were drawn in this case, we discover no valid objection to the charge of the judge. And the consequence is, that the judgment of the county court must be affirmed.