HENRY CARLISLE AND WIFE *v.* THE TOWN OF SHELDON.

*New Trial.    Statute.    Highways.*

Where a town was a party to a suit, and a motion for a new trial was made by the other party, on the ground that some of the jurors had been treated to food and drink by inhabitants of the town; it was *held*, that the mere furnishing of food and drink, when confined within the limits of ordinary hospitality, without any improper design, and where it has no improper influence on the verdict, is not regarded as fairly coming within the mischief which the statute, (G. S., p. 332, § 16,) was designed to guard against.   And

*Held*, also, that an inhabitant of the town was not such a "party" as the statute contemplated.   The treating must be at the expense of the town, or the act of its authorized agents.

In an action by husband and wife against a town for injury to the wife on the highway while riding with the husband, it was *held*, that any want of ordinary care on the part of the husband was attributable to the wife in the same degree as if she were acting wholly for herself, and would be a bar to a recovery.

ACTION ON THE CASE, for an injury sustained by the wife of Henry Carlisle by reason of the insufficiency and want of repair of a highway in the town of Sheldon, being an action for an injury that would survive to the wife.   Trial by jury, April Term, 1865, ALDIS, J., presiding.

The evidence of the plaintiffs tended to show, that, as the plaintiffs, on a dark night, were driving along the highway where the road is built upon a side hill that begins to slope about two feet from the west margin of the road, and falls about seventy feet in a distance of one hundred feet from the road to the river, and where there were no guards or muniments, they discovered by the motion of the wagon that they were out of the road, but in the darkness they could not tell on which side ; that Carlisle thinking they

were on the upper side, reined his horse a little to the right, his wife saying to him that " they were off the lower side of the road ;" that very soon after, Carlisle discovered that he was off the lower side of the road, and reined his horse around to the left to come into the road again, and as he began to turn, the wagon cramped and tipped, and as Mrs. Carlisle testified, the horse backed a little, and she, attempting to save her life, jumped from the wagon and struck about fourteen feet down the slope and broke one of her legs; and that Carlisle with his horse and wagon came into the road again from twenty to thirty feet from where he left it, without turning over.

At the point where Carlisle drove off the road the ground was not as steep as at the point where he came into the road again.

The evidence on the part of the defendants tended to show that Carlisle did not drive off the lower side of the road at all, but at or nearly opposite the place where Mrs. Carlisle was found ; that the plaintiff's horse was driven near the east bank and upper side of the road as far as a slight ditch near the bank, and that his horse cramped the wagon to the right, and backed, and the near hind wheel of his wagon went over the bank on the west margin of the road one and a half to two feet, and that the other hind wheel did not go off the road more than from four to six inches, and that the rest of the wagon and the horse were in the travelled path of the road.

The evidence of the plaintiffs tended to show that the horse that the plaintiffs were driving that evening was a kind and safe horse to drive. But the evidence of the defendants tended to show that a few months before, the horse when driven by a woman in a heavy covered carriage, with three women in the carriage, up a sharp hill in Highgate, came to a gully in the road and stopped, and backed down the hill a short distance, and was reined out at the side of the road and stopped, but was then driven up the hill by a man without any difficulty, and this was the only instance that said horse was known to have backed without being directed to by the driver, but had been frequently driven by women and children with perfect safety.

The charge of the court, to which the plaintiffs excepted, is set forth in the opinion.

29

Carlisle et ux. *v*. Sheldon.

At the September Term of said court, BEARDSLEY, J., presiding, the plaintiffs moved for a new trial for the following reasons : That one of the jurors who sat upon and tried said cause, after he was empannelled and sworn, expressed an opinion upon an issue material to such cause in the presence of, and to, the agent, prosecuting the cause in behalf of the defendants, before any testimony had been given on either side of the case ; of which fact, the plaintiffs were not aware until after a verdict had been rendered ; that the defendants, who obtained a verdict in their favor, gave to one of the jurors in the cause, knowing him to be such, victuals and drink by way of treat during the term of court, in which the verdict was obtained, and while the cause was in progress of trial. The evidence upon these points, is fully stated in the opinion.

The court decided that the testimony, if all true, was insufficient in point of law to set aside the verdict, and also considered that in the exercise of a sound discretion they ought to deny the motion.

To the decision of the court overruling the motion, the plaintiffs excepted.

*Edson & Rand* and *Dewey & Noble*, for the plaintiffs.

In cases where there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly and may have been corruptly done. *Commonwealth* v. *Roby*, 12 Pick. 520. The evidence shows that the inhabitants treating the jurors were directly parties in interest in the event of this suit, though not so of record. It would be absurd to say that the statute in speaking of a party meant the party of record only when his interest is at most merely nominal. A town is a corporation and a thing in imagination only, and the law takes notice that the material persons, members of the corporation, of whom the corporation consists, are not strangers to the corporation, but are the real parties interested who are answerable for the liabilities and share in the fruits of the corporation. *Mellor* v. *Spateman*, 1 Saund. 345 ; *Quinebaug Bank* v. *Leavens*, 20 Conn. 87 ; *Montpelier* v. *East Montpelier*, 29 Vt. 19 ; G. S., p. 332, § 16.

This is an action that would survive to Mrs. Carlisle and enure to her benefit. The law compels the joinder of her husband with

Carlisle et ux. *v.* Sheldon.

her in the suit. The question is, shall this joinder *ex necessitate* operate to defeat her remedy?

That Mr. Carlisle was wanting in ordinary care and skill, or was guilty of negligence or want of ordinary care in driving in the darkness of the night, or in not stopping his horse and getting out of his wagon to examine the place, is too remote to base a defence upon in this action. *Robinson* v. *Cone*, 22 Vt. 213.

The jury should have been told that if the accident would not have occurred except by the act of Mrs. Carlisle, that they must decide whether she exercised ordinary care and prudence, and that if they did not find that she was wanting in ordinary care and prudence the plaintiffs would be entitled to recover.

*H. S. Royce* and *Burt & Hall*, for the defendants.

The decision of the county court overruling the motion cannot be raised in this court. *Houghton* v. *Slack*, 10 Vt. 520; *Minkler* v. *Minkler's Estate*, 16 Vt. 193; *Cummings et al.* v. *Fullam*, 13 Vt. 459; *Edgell* v. *Bennett et al.*, 7 Vt. 534.

The charge of the court was correct. *Noyes* v. *Morristown*, 1 Vt. 353; *Rice* v. *Montpelier*, 19 Vt. 470; *Cassidy* v. *Stockbridge*, 21 Vt. 391; *Horton* v. *Ipswich*, 12 Cush. 488; 32 Maine, 46; *Reed* v. *Northfield*, 13 Pick. 94; 32 Maine, 574. Unless the act of jumping out of the wagon by Mrs. Carlisle, was one of reasonable precaution under the circumstances, the town are not liable. *Ingalls* v. *Bills*, 9 Met. 1. If the vicious habits of the plaintiffs' horse contributed in any degree to the injury, the plaintiffs could not recover, and the question was properly submitted to the jury. *Murdock* v. *Warwick*, 4 Gray, 178; *Barber* v. *Essex*, 27 Vt. 62. When the darkness is such that the plaintiffs cannot see where to drive, and know the condition of the road, then it may be assumed as matter of law, that there was a want of ordinary care. *Swift* v. *Newbury*, 36 Vt. 355; *Barber* v. *Essex*, 27 Vt. 62.

The opinion of the court was delivered by

KELLOGG, J. This case has been heard in this court upon two distinct bills of exceptions taken by the plaintiffs, in the county court, one of which has reference to the decision of that court over-ruling the motion for a new trial, and the other of which has reference to the charge given by the court to the jury on the trial.

The motion for a new trial was denied by the county court for the reason that the testimony introduced and relied upon in support of it, if true, was insufficient in point of law to justify the court in setting aside the verdict; and also for the reason that the court were of the opinion that in the exercise of a sound discretion the motion ought to be denied. The only question arising from the denial of this motion which can be the subject of revision in this court, is the decision that the testimony relied upon in support of the motion was not sufficient in law to justify the court in setting aside the verdict; and, in the consideration of this question, all the facts which the testimony tends to establish must be treated as proved. The facts claimed to be proved by this testimony are substantially these :—This case was tried at the April Term of the county court in 1865, and on a Saturday, while the trial was in progress, the jury, by leave of the court, were allowed to go to the place in the town of Sheldon where the injury, which is the subject of the action, happened, and make a personal examination of the locality, accompanied by counsel for the respective parties ; and that, after this examination was completed, one o'clock, one of the jurors, by invitation, went to the house of Woolford Peckham, a rateable inhabitant of Sheldon, and lodged there on that night, and took supper and breakfast there, and returned to his home in Fairfield on the next morning,—that day being Sunday ;—and that, before breakfast that morning, on the invitation of Peckham, he drank some spirituous liquor which was furnished by Peckham ; and that he paid nothing for the entertainment furnished to him by Peckham, and that this entertainment was gratuitously furnished ; and also that one Barr, another rateable inhabitant of Sheldon, and an inn-keeper there, on the same Saturday, and after the jury had finished their examination of the locality of the accident, invited one Stilphen, another of the jurors, to drink some spirituous liquor, and that Stilphen, on this invitation, drank spirituous liquor which was furnished to him by Burr on that occasion. The county court, in deciding that, in the exercise of a sound discretion, the motion for a new trial ought to be denied, virtually decided that the testimony failed to show that the entertainment furnished to these jurors while at Sheldon had any improper influence upon the verdict, and this finding is not subject to be reviewed in

this court.  The only question which can be considered on the plaintiffs' exceptions to the decision by which the motion for a new trial was overruled is, whether the furnishing of victuals and drink to these jurors by a rateable inhabitant of Sheldon, without compensation, should be considered as a sufficient reason in law for setting aside the verdict, even though no improper influence was exercised upon the verdict by this means.  The statute provides that " if any party obtaining a verdict in his favor in any court, shall during the term of said court in which such verdict is obtained, give to any one of the jurors in such cause, knowing him to be such, any victuals or drink, or procure the same to be done, *by way of treat*, either before or after said verdict, on due proof thereof being made, it shall be sufficient reason to set aside the verdict and award a new trial in such case."  (G. S., p. 332, § 16.)  If the furnishing of victuals and drink to these jurors without compensation is to be considered as a giving by way of treat, the decision of the county court in respect to the legal sufficiency of the testimony was erroneous.  The decision of the question depends wholly upon the construction which should be given to the statute.  We think that the giving of victuals and drink " *by way of treat*,"referred to in the statute, is something distinct from the ordinary exercise of friendly hospitality, and that the statute was not intended to forbid such acts of hospitality in the intercourse of friends as would be usual and ordinary, but was designed to apply to something of a different character,—to an entertainment or treat which suggests the idea of convivial enjoyments and fellowship, rather than the customary hospitalities of daily life. We do not consider the mere furnishing of food or drink, when confined within the limits of ordinary hospitality, as fairly coming within the mischief which the statute was designed to guard against ; and when it is found, as it was virtually found by the county court in this case, that the entertainment furnished to the jurors, was not furnished for any improper purpose, and that it had no improper influence upon the verdict, we think that it ought not to be regarded as falling within the sense or application of the statute.  We think also that a rateable inhabitant of the town is not such a " party " as is contemplated by the statute.  The town is a municipal corporation, and appears and defends suits by an agent, and no single inhabitant has any con-

trol over the defence to be made in the suit, nor any right to interfere with the proceedings. The town is the only party defendant in the suit, and the interest of its inhabitants in the result is indirect as well as contingent. It is a sufficient satisfaction of the terms and spirit of the statute, as we think, to hold that the giving of victuals or drink to a juror must be at the expense of the town, or must be the act of some one of its authorized agents in order to constitute it a giving by a party to the suit. We think that the county court correctly decided that the testimony was not legally sufficient to set aside the verdict and order a new trial; and the plaintiff's exceptions to this decision are accordingly overruled.

We come now to the plaintiffs' exceptions to the charge of the court to the jury on the trial. The injury for which the action was brought was an injury to Mrs. Carlisle, the *feme* plaintiff, who was riding in a wagon with her husband at the time of the accident. The charge was, that if the husband, on the occasion of the accident, was wanting in ordinary care and skill, or was guilty of negligence or want of ordinary care in driving in the darkness of the night, or in not stopping his horse and getting out of his wagon to examine the place, and such negligence or want of ordinary care contributed in any, even the slightest, degree, to the injury, although the road was insufficient and out of repair for want of a railing or guard on its lower margin, the plaintiffs could not recover; and that if the jury should find that Mrs. Carlisle was justified under the circumstances in jumping from the wagon as she did, and that, if she had remained in the wagon, the injury would not have happened, still, if her husband was guilty of negligence and a want of ordinary care as above stated, then the plaintiffs could not recover, although the action would survive to her. It is not disputed that the evidence on the part of the defendants, had a tendency to show that the husband was driving an unsafe horse, and it was admitted that the night was so dark that he could not see the road, and the defendants' evidence had a tendency to impute to him a want of ordinary care and prudence in driving in that locality at that time. The question on this part of the case is whether a lack of ordinary care and prudence on the part of the husband is in law, under the circumstances of the case, a bar to a recovery for an injury to the wife when she herself

was in the exercise of that degree of care and was in no fault whatever. The wife was riding in a wagon which was drawn by a horse driven by her husband, who was also riding in the same wagon. She was a passenger over the highway, and she stands in no different position in respect to her rights as against the town from that which she would occupy if the driver of the vehicle in which she was carried had been, instead of her husband, one employed for that purpose. The negligence or want of ordinary care of her servant would have the same effect, and be attended with the same legal consequences, which would follow from her own negligence or want of care. If she had been a passenger in a stage coach on this occasion, and had received the same injury, under precisely the same circumstances, although she might have had a cause of action against the proprietors for the negligence or want of ordinary care of the driver, we regard it as clear that no action could have been maintained against the town, because the proprietors and their driver would, in respect to the town, be treated as being her agents and servants, and their negligence or want of ordinary care would be attended with the same consequences which would result from her own negligence and want of such care. The passenger would, in respect to the town, stand upon the same footing that he would if he had himself been the driver. There is nothing in the marital relation which would change the situation of the wife in respect to her husband's negligence under such circumstances, for the same consequences would have followed if the relation, instead of being that of husband and wife, had been that of parent and child, father and daughter, or master and servant, or if she had been an entire stranger, and had been carried by her husband as a passenger gratuitously and without any expectation of a reward. She was under the care of her husband, who had the custody of her person and was responsible for her safety; and any want of ordinary care on his part is attributable to her in the same degree as if she were wholly acting for herself. *Holly* v. *Boston Gas Light Co.*, 8 Gray, 123, 131, 132.

If, in respect to the town, Mrs. Carlisle should be treated as responsible for the lack of ordinary prudence and care on the part of her husband on the occasion of her injury, the charge of the court

to the jury was in all respects correct and in accordance with the settled doctrine in respect to the liability of towns for injuries occasioned by the insufficiency of highways. *Cassedy* v. *Stockbridge*, 21 Vt. 391; *Kelsey* v. *Glover*, 15 Vt. 708.

Judgment of the county court for the defendant affirmed.