CYNTHIA BRONK, AS ADMINISTRATRIX, &c., *against* THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The deceased and another person who was driving, while riding on a wagon and about to cross a railroad track, neglected to took up or down the track, although if either of them had done so, they could have seen the approaching train in time to avoid it. *Held*, that this was such contributive negligence on the part of the deceased as prevented a recovery against the railroad company for a collision with the approaching train.

APPEAL from a judgment of this court entered on the verdict of a jury.

The action was to recover damages for the defendant's negligence by which the death of the plaintiff's intestate was caused.

The defense was, that the negligence of the deceased had contributed to the accident.

On the trial it appeared that the deceased, while in a wagon

crossing the defendant's track in New York city, had been run into by the defendant's locomotive, and killed.

The facts relied on to show contributive negligence are fully stated in the opinion.

Plaintiff had a verdict, and defendant appealed.

*Calvin G. Childs,* for appellant.

*Wheeler H. Peckham,* for respondent.

DALY, Chief Justice.—The motion for a nonsuit at the close of the testimony should have been granted. It was a plain case of contributory negligence. If either Brown or the intestate had looked up the railroad before Brown drove upon the track, the approaching locomotive could have been seen and the collision avoided. That Brown did not look to the right or the left as he approached the track, abundantly appears from his own evidence. He says, " almost the same moment I saw it (the engine), it struck me; " and Bronk, the intestate, when they were within ten feet of the track, was seen, by the plaintiff's witness Paulding, looking back in the direction of the arsenal, which, it would seem, Bronk continued to do until the collision; for Paulding further testifies that they were just going across the track, one (Bronk) looking behind, and the other (Brown) driving his horse the same as any ordinary man would do.

The train passed through a cut from 73d to 66th street, and the collision occurred at the junction of 64th street and the Fourth avenue. The plaintiff's witness De Monet, who was standing at the corner of 64th street and the Fourth avenue, on the west side of the avenue, heard the rumbling of the wheels of the engine two or three minutes before the collision, and, looking up, he saw the locomotive, which was then about half way through the cut, or about four blocks off. The witness was on the same side of the avenue as the wagon, and those in the wagon, if they had looked, had a better opportunity for seeing than he had, as they were more elevated. The defendant proved that a person standing on the northwest

corner of 64th street and the Fourth avenue, could see up the avenue and through the cut, to 68th street. That 200 feet from the avenue, in approaching the track from the Fifth avenue side through 64th street, a person could see up the avenue nearly to 67th street, or 650 feet, and at 100 feet, to 68th street. There were no houses then on the north side of 64th street, between the Fourth and Madison avenues, nor any obstruction, except a small shanty, about 12 or 14 feet high, between 64th and 66th streets, on the west side of the Fourth avenue, the side from whence the wagon was approaching; and the witness testified that the shanty even would be no obstruction, as he thought the smoke stack of the engine could be seen above it. The defendants also proved by a surveyor, who examined the ground afterwards and made a map of it, that from points 100 and 150 feet from the place of the accident, he could see up the track 780 feet, and at a point 65 feet from the accident, he could see nearly to the tunnel, or 1,000 feet. He also testified that, after passing the shanty, there was nothing to obstruct the view from a point 223 feet from the place of the accident, and a point 650 feet up the railroad.

It is abundantly shown, by this and other testimony, that if either Brown or Bronk had looked up the road, as they ought to have done before attempting to cross it, the approaching engine could have been seen and the collision avoided. There was, on the part of both of them, a want of ordinary care. Bronk was not free from all responsibility because Brown was driving. Brown testified that Bronk was a very careful man and a driver himself, and yet, whilst approaching and in the act of crossing a railroad, he had his head turned around and was looking back in the direction of the arsenal which they had just passed. His inattention was, even to Brown, remarkable; for Brown testifies: " It was most singular to me that my friend did not see it ; he never spoke to me ; he never said to me, ' take care, look out,' or nothing."

If it is in the power of a party, by the exercise of ordinary care, to avoid an accident, the law holds him to the exercise of it. The intestate was seated in the wagon alongside of the

driver as they were approaching and were about to cross a railroad. His opportunity for seeing any danger which threatened from an approaching locomotive was equal to that of the driver. If anything, it was greater, for the driver had charge of the horse, and the intestate had nothing to do but to use his eyes as they approached what is always a place of peril, a railroad track. The ordinary sense of self-preservation should lead any any man similarly situated to look at such a moment to see that no locomotive was approaching; instead of which he had his head turned away from the road and was looking back, blindly leaving everything to the driver, who as blindly drove upon the track and came in collision with the locomotive, which he could have avoided by the exercise of the most ordinary care. It was an act of mutual negligence, for Bronk was in a position in which he could have given warning of the approaching danger and avoided it, if he had acted with the ordinary prudence to be expected from a man in a wagon which was approaching and about to cross a railroad.

The case is distinguishable from that of a passenger in a railroad car, whose position is one in which he can do nothing to avert the act which may be contributory negligence on the part of those who have the control and management of the locomotive. Such are the cases of *Chapman* v. *N. H. R. R.* (19 N. Y. 351) ; *Colegrove* v. *N. Y. & Harlem R. R. Co.* (20 Id. 492) ; *Webster* v. *Hudson River R. R.* (38 Id. 260). But it is a case in no way distinguishable in principle from *McCall* v. *N. Y. Central R. R.* (54 N. Y. 642) ; *Allen* v. *B. & A. R. R.* (105 Mass. 77); *Carlisle* v. *Sheldon* (38 Verm. 447); and *Beck* v. *East River Ferry* (6 Robt. 87), in which it was held that the plaintiff was not entitled to recover. The judgment should therefore be reversed.

J. F. DALY, J., concurred.

Judgment reversed.