THE CITY OF JOLIET

*v.*

MARY A. SHUFELDT.

*Filed at Ottawa, January* 19, 1893.

1. NEGLIGENCE — *defective street — efficient cause.* Where a horse, while being driven along a street, in consequence of the opening of the bits in its mouth, runs away, without fault on the part of the driver or the plaintiff, whereby the plaintiff is thrown from the vehicle at a place where the street was left in an unsafe condition and injured, neither the running away of the horse nor the defect in the street being alone sufficient to produce the injury, but it is produced by the combination of both, and they become, therefore, in combination, the efficient and proximate cause, in such case the causal relation is direct between the defective street, occasioned by the negligence or omission of duty by the city, and the injury to the plaintiff, and without any intervening efficient cause.

2. If the accident of a team running away, without fault or negligence, would not have caused the injury to the plaintiff, but for a defect in the street, and such defect is the result of carelessness or negligence on the part of the city, it will be liable for the injury.

3. SAME — *injury by the combined result of accident and negligence.* If a party, while observing due care for his personal safety, is injured by the combined result of an accident and the negligence of a city or village, and without such negligence the injury would not have occurred, the city or village will be held liable, although the accident be the primary cause of the injury, if the consequences could, with common prudence and sagacity, have been foreseen and provided against by the city.

4. The general doctrine is that it is no defense, in an action for injuries, resulting from negligence, that the negligence of third persons, or an inevitable accident, or an inanimate thing, contributed to cause the injury of the plaintiff, if the negligence of the defendant was an efficient cause, without which the injury would not have occurred.

5. SAME — *instruction assuming ordinary accident.* In an action against a city for an injury caused by a wall at a street crossing not being of sufficient height to prevent a person being tipped over the same by a horse running away, from a defect in the bits of the bridle so as to be beyond the control of the driver, it is not prejudicial error for an instruction to assume that the accident by which the horse became uncontrollable was an ordinary accident likely to occur, as the breaking of bridles and harness and of vehicles is of constant occurrence, and is a matter within common knowledge and experience, and needs no proof.

APPEAL from the Appellate Court for the Second District; — heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

The facts are substantially as follows:

"Exchange street in the city of Joliet runs west from Bluff street, which extends north and south along the base of a bluff or hill. Exchange street was laid out sixty-six feet wide, and originally extended up the hill on quite a steep grade to an intersection with Broadway, at the top of a hill at about two hundred and forty-eight feet west of Bluff street. Broadway runs north and south, and extends from its intersection with Exchange in a course up a hill to Oneida street. About the year 1886 the city of Joliet cut down about two-thirds of Exchange street, for the purpose of making a more level and convenient route from Bluff street west to regions lying west of Broadway, and thereby entirely severed the former connection of most of Exchange street with Broadway, and carried Broadway over the part so cut down by means of a viaduct. About one-third of Exchange street was left substantially at the original grade, connecting Broadway with Bluff street, as before. The roadways were of stone and were separated by a stone wall. There was a sidewalk on the north side of the upper roadway and a carriage-way next south with a cobble-stone gutter next the stone wall. The carriage-way declined toward the wall, the decline from the middle being about six inches in ten feet. The stone wall was made with benches or rises going up the hill and finished with coping stones laid level. The wall was about four feet higher than the carriage-way proper and from four to something over five feet higher than the gutter.

A carriage could be driven in the gutter and close to the wall. On the evening of June 2, 1889, at about ten o'clock, Mary A. Shufeldt was riding in a top buggy, with the top partly down, drawn by a horse procured at a livery stable by a

young man who was driving and managing the horse, down the hill on Broadway from Oneida street toward the viaduct and the upper roadway on Exchange street. The horse started into a trot and when the driver pulled the lines to check him, it was found that the bit had parted at the connection of the mouth-piece with one ring, and the bridle was pulled back off from the horse's head upon his neck and he was freed from any kind of restraint. The horse ran down Broadway and turned into the upper roadway on Exchange street toward the barn where he was kept. In making the turn the buggy struck the stone wall at a point where it was a little over five feet higher than the gutter and between sixteen and seventeen feet higher than the lower roadway. The driver, who was nearer the wall, was thrown over it into the lower roadway, and Miss Shufeldt was thrown upon the wall and then fell from the wall into the lower roadway. The seat arm to which she was clinging was broken and her hand lacerated and she sustained injuries from which she was paralyzed and became utterly helpless, with no prospect of recovery. The horse continued down the hill with the buggy until it struck a telegraph pole where the buggy was left with the right fore wheel dished and the thills and cross-bar broken. Suit was instituted and there was a verdict and judgment for $5000. It should be added that in the direction in which appellee was going on Broadway, there was a sharp descent to Exchange street and continuing into Exchange street. The grade is sharp at this point, being about nine feet in every one hundred feet. The roadway around the curve, from Broadway into Exchange street, declines both ways, toward the wall and south, that is, the outside of the curve made, declines both ways. By reason of the sidewalk, on the north side of Exchange street, said street is reduced to about twelve feet in width. Before the accident the horse was kind and gentle, the harness practically new, and it does not appear, nor is it claimed, that

appellee or the driver was guilty of any negligence or want of proper care.

The charges of negligence laid in the declaration involve the construction of the street and wall, that the road was of insufficient width, that it was out of repair and in bad and unsafe condition, and that the stone wall dividing the upper and lower roadways was insufficient in height, etc.

On appeal to the Appellate Court the judgment was affirmed and the city appeals.

Mr. J. W. DOWNEY, City Attorney, and Mr. J. L. O'DONNELL, for the appellant:

It is the duty of the city to keep its streets in a reasonably safe condition so as not to produce damage to a traveler even in cases of ordinary accidents likely to occur. *Joliet* v. *Verley*, 35 Ill. 58.

But before a recovery can be had in any case it must be pleaded and proven that the negligence complained of was the proximate cause of the injury. *Fent* v. *T. P. & W. Ry. Co.*, 59 Ill. 349; *T., W. & W. Ry. Co.* v. *Muthersbaugh*, 71 id. 572; *Phillips* v. *Dickerson*, 85 id. 11; *Schmidt* v. *Mitchell*, 84 id. 195; *Shugart* v. *Egan*, 83 id. 56; *Marble* v. *Worcester*, 4 Gray, 395; *Rockford* v. *Tripp*, 83 Ill. 247; *Joliet* v. *Seward*, 86 id. 402; *Joliet* v. *Seward*, 99 id. 267.

Whether or not the street in question was in a reasonably safe condition to provide against ordinary accidents likely to occur, was a question of fact, and whether or not the running away of the horse, as shown by the evidence, was an ordinary accident likely to occur, was a question of fact and for the jury. *The Penn. Co.* v. *Frana*, 112 Ill. 398; *Myers, Admr.*, v. *I. & St. L. R. R. Co.*, 113 id. 386; *Copner* v. *Penn. Co.*, 12 Bradw. 600; *C. & W. W. Ry. Co.* v. *Moranda*, 108 Ill. 587; *C. & A. R. R. Co.* v. *Kelly*, 127 id. 637; *I. & St. L. R. R. Co.* v. *Morgenstern*, 106 id. 216.

Mr. GEO. S. HOUSE and Messrs. SHUMAN & DEFREES, for the appellee:

The running away of horses attached to vehicles is so clearly a common and ordinary accident, as to be expected or anticipated. Such an accident is an ordinary one to be guarded against. *City of Lacon* v. *Page*, 48 Ill. 499; *Joliet* v. *Verley*, 35 id. 58.

If a person, while observing due care for his personal safety, be injured by the combined result of an accident and the negligence of a city or village, and the injury would not have been sustained but for such negligence, yet although the accident be the primary cause of the injury, if it was one which common prudence and sagacity could have foreseen and provided against, the negligent city or village will be liable for the injury. *Village of Carterville* v. *Cook*, 129 Ill. 152; *Joliet* v. *Verley*, *supra;* *King* v. *Cohoes*, 77 N. Y. 83; *Bloomington* v. *Bay*, 42 Ill. 503.

When the injury is the combined result of an accident and of a defect in a street, and the damage would not have been sustained but for the defect, although the primary cause be a pure accident, yet if there be no fault or negligence of the plaintiff, if the accident be one which common prudence could not have foreseen and guarded against, the city is liable. *Palmer* v. *Andover*, 2 Cush. 600; *Kelsey* v. *Geloor*, 15 Vt. 708; Angell on Highways, 275.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The principal point urged for reversal arises upon the second instruction given on behalf of plaintiff; whereby the jury were in effect told, that if the plaintiff with a companion who was driving, was riding in a buggy drawn by a horse along and upon one of the public streets of the city, and that without the fault of the plaintiff, or her companion, they being in the exercise of ordinary care and prudence, the bit of the bridle, on the horse, became loosened so that control of the horse was lost,

and thereby the horse became and was unmanageable and ran away, without negligence on the part of plaintiff or said driver, and turned from said street into another public street of said city; and the loosening of the bit, and loss of control of the horse was a pure accident, which common prudence and sagacity could not have foreseen and provided against, and that said street into which the horse turned was so out of repair, or defective, that the same was not reasonably safe or secure to guard against ordinary accidents likely to occur thereon, to persons using the same without fault, and in the exercise of ordinary care and prudence, and that by reason of the unsafe and defective condition and repair of said street, the said buggy was thrown against a wall there existing, with such force as to throw the plaintiff out of the buggy, and cause the injury complained of, and the city had actual notice of such defects in the street, etc. the city would be liable for the injuries thus sustained.

It is insisted with great force that conceding the negligence of the defendant, such negligence was not the proximate cause of the injury; and that in any event the running away of the horse concurring in producing the injury, the defendant is, therefore, not liable. We are referred to a number of Massachusetts cases, and some others may be found, which sustain the views of counsel. In this State, however, those cases have not been followed. In *Joliet* v. *Verley*, 35 Ill. 58, we held that if a plaintiff, while observing due care for his personal safety, was injured by the combined result of an accident, and the negligence of a city, or village, and without such negligence the injury would not have occurred, the city or village will be held liable, although the accident be the primary cause of the injury, if the consequences could with common prudence and sagacity have been foreseen and provided against. This doctrine has received express approval in many subsequent cases, among which may be mentioned, *Bloomington* v. *Bay*, 42 Ill. 503; *City of Lacon* v. *Page*, 48 id. 499; *Village of*

*Carterville* v. *Cook*, 129 id. 152. In *City of Lacon* v. *Page*, *supra*, the doctrine was applied to a case like the present, where the accident concurring with negligence of the city in producing the injury, was the running away of the plaintiff's horses, without fault on his part. There the city having constructed a drain under one of its streets, allowed it to so get out of repair, that a hole a foot wide, two feet long and eight inches deep had been made in the street. The plaintiff was driving his horses to a lumber wagon, when they ran away, one wheel of the wagon going into this hole; in the rebound plaintiff was violently thrown to the ground and injured. We there said, after approving the rule in the *Verley* case, *supra*, and holding it applicable: " One great reason for requiring a corporation to keep its streets in repair is to reduce, as far as possible, the injuries that may result from the accidents so liable to occur in crowded thoroughfares. If the accident would not have caused the injury but for the defect in the street, and that defect is the result of carelessness on the part of the city, and the plaintiff has used ordinary care, the city must be held liable."

The same doctrine has been announced in many decided cases elsewhere. See *King* v. *City of Cohoes*, 77 N. Y. 83; *Baldwin* v. *Turnpike Co.*, 40 Conn. 238; *Hull* v. *Kansas City*, 54 Mo. 601; *Hunt* v. *Town of Pownal*, 9 Vt. 411; *Winship* v. *Enfield*, 42 N. H. 197; *Hey* v. *Philadelphia*, 81 Pa. St. 44; *Sherwood* v. *City of Hamilton*, 37 U. C. (Q. B.) 410; *Palmer* v. *Andover*, 2 Cush. 600; *Kelsey* v. *Glover*, 15 Vt. 708.

In *Baldwin* v. *Turnpike Co.*, *supra*, it is said: "If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the negligence of the defendants combined with some accidental cause to which the plaintiff has not negligently contributed, the defendants are liable. Nor will the fact that the horse of the plaintiff was uncontrollable for some distance before the injury occurred in any way affect

the liability of the defendants." And the court held the loss should be charged upon the party guilty of the first and only negligence. In *King* v. *City of Cohoes, supra,* after reviewing the authorities upon this subject, it is said : " When, without any fault of the driver, a horse becomes uncontrollable, or runs away, it is regarded as an incidental occurrence, for which the driver is not responsible ; and the rule, as laid down in the cases cited, may be formulated thus : When two causes combine to produce an injury upon a traveler upon a highway, both of which are in their nature proximate — the one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible — the municipality is liable, provided the injury would not have been sustained but for such defect. This appears to us to be the reasonable rule." And after noting the care and diligence required of municipalities, the court adds: " They are not bound to furnish roads upon which it will be safe for horses to run away, but they are bound to furnish reasonably safe roads; and if they do not, and a traveler is injured by culpable defects in the roads, it is no defense that his horse was at the time running away, or was beyond his control."

We are aware that the courts of Massachusetts, Maine, Wisconsin, and perhaps others, have adopted the contrary rule, but we regard the doctrine to which this court is committed, as the better and more reasonable one, and must decline to depart from it. No additional duty or obligation is imposed thereby, upon the municipality. It is only required to use reasonable diligence and care, in making its streets safe for the public use, in view of those accidents, which may, in the exercise of common prudence, be anticipated and guarded against. The general doctrine is, that it is no defense, in actions for injuries resulting from negligence, that the negligence of third persons, or an inevitable accident, or that an inanimate thing contributed to cause the injury to the plaintiff, if the negligence of the defendant was an effi-

cient cause, without which the injury would not have occurred. *W. St. L. P. Ry. Co.* v. *Shacklet, Admx.*, 105 Ill. 364; *Transit Company* v. *Shacklet*, 119 id. 232; *Consolidated Ice Mach. Co.* v. *Keifer*, 134 id. 481; *Pullman Palace Car Co* v. *Laack*, 143 id. 242; *Peoria* v. *Simpson*, 110 id. 301; see 16 Am. & Eng. Enc. of L. 440–3 and notes; 2 Thomp. Neg. 1085. This being the general rule, we are unable to perceive in what way the intervention of the mere brute force or will of the horse, at liberty without fault or negligence of the plaintiff, and for which neither party is responsible, can be different in its effects or consequences from the intervention of the act of a third person, or of an accident having a like effect, provided the injury would not have occurred but for the negligence of the defendant. In such case neither the running away of the horse, nor the defects in the street are alone sufficient to produce the injury, but it is produced by the combination of both, and they become, therefore, in combination, the efficient and proximate cause. The causal relation is direct between the defective street, occasioned by the negligence, or omission of duty, by the defendant, and the injury to the plaintiff, and without any intervening efficient cause.

The verdict of the jury in this case was general and might have been predicated on either of the charges contained in the declaration. They may have found that the negligence consisted in not raising the wall a sufficient height to prevent the plaintiff from being precipitated seventeen feet upon the stones at the bottom of the cut, or that the road was left too narrow, or because of its sloping toward the wall. The horse had already run down the declivity upon Broadway, and upon reaching the intersection with Exchange street, made the turn into this narrow twelve-foot street with a descent of about nine feet in one hundred to the east, or lengthwise of the street, and descending also to the south, or toward the wall separating this roadway from the other cut by the city, and the natural result, the road, as stated by counsel for appellant, being smooth,

would be to give the buggy a violent lateral motion in the direction of the wall, which would be accelerated by the declivity of the road, and which might have been avoided had the road been level, or the outer edge of the segment of the circle described by the horse in turning, been higher than the inner, or had the road sloped from, instead of to, the wall. The evidence shows that the horse did not come in contact with the wall, and the jury would be justified in finding that if the street had been of reasonable width, or had been so constructed that the buggy would not have been thrown against the wall, the injury would not have occurred. If they found that the injury resulted from either of said causes, and that the city was negligent therein, they would also be justified in finding that such negligence was the proximate cause of the injury. It is, however, urged that the court in this instruction assumed that the accident by which the horse became uncontrollable was an ordinary accident, likely to occur, and that being a question of fact, proper to be passed upon by the jury, it was error. Without pausing to discuss or determine whether the instruction is susceptible of that interpretation, if the point be conceded, it is not prejudicial error. The requirement of the instruction, before the jury could find the defendant guilty, was, that they should believe, from the evidence, "that said Exchange street was so out of repair or defective, that the same was not reasonably safe or secure to guard against ordinary accidents, likely to occur thereon to persons using the same," in the exercise of ordinary care and prudence. By another instruction given by the court, at its own instance, the jury were told that the defendant was not liable for the injury, if they believed, from the evidence, that the wall in question was of sufficient height to be safe for persons who, exercising reasonable care, etc., and sufficiently high to prevent horses, carriages and persons from tipping or falling over the same " in case of accidents, *ordinarily likely to occur*, while so driving on said street at that point, and that the street at said point was other-

wise, as to its condition of repair, in a reasonably safe condition for persons driving thereon," etc. Taking these instructions together it seems impossible that the jury could have understood the court as assuming the fact stated. But if this was otherwise it would form no just ground for reversal. The breaking of bridles and harness, and of vehicles, are of constant occurrence. That horses, although otherwise tractable and gentle, are liable to, and do, run away when thus freed from restraint, is a common and ordinary experience against which every reasonable and prudent man takes precaution. There was nothing extraordinary in this horse running away, and it might reasonably have been anticipated. No one would think it necessary to prove that it was an accident likely to occur; it is a matter of common knowledge and experience. And if the case were sent back for another trial, and the question submitted as one of fact, the finding could by no possibility be different, as to the accident being one ordinarily likely to occur. Other objections were interposed which we have carefully examined, but deem without merit. Finding no prejudicial error the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*