### Western Tube Company v. Frederick W. Pederson.
#### Gen. No. 4,691.

1. EXCEPTIONS—*how must be argued upon appeal.* The Appellate Court is not bound to consider exceptions where the brief filed in support thereof merely states that such exceptions are well taken; in order to obtain review, the exceptions relied upon should be argued in the brief.

2. NEGLIGENCE—*when instructions upon, properly modified.* Instructions which tell the jury that the plaintiff is only entitled to recover when he has shown that his injury was caused "wholly" by the defendant's neglect, are properly modified by striking therefrom the word "wholly."

Action in case for personal injuries. Appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1906. Affirmed. Opinion filed October 16, 1906.

CHARLES K. LADD, for appellant.

ANDERSON & ANDREWS, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Pederson, the appellee, was in the employ of Western Tube Company, the appellant, as a "rougher" upon its rolls in its mills at Kewanee, and on February 18, 1903, he was assisting on changing the rolls. A steel chisel bar struck him a severe blow upon his lower jaw and broke it, and he was severely and permanently injured. He sued appellant therefor, and recovered a verdict and a judgment for $1,850 from which this appeal is prosecuted.

At the place in question appellant's work required three rolls, one at the bottom, another just above that, and a third on top. When these rolls were in operation, sheets of iron were passed between them, and thereby reduced to the thinness appellant required. The rolls were frequently removed and other rolls of other dimensions put in their places. The roll which was being put in place when appellee was injured weighed about forty-five hundred pounds. The body of the roll was about eighteen inches in diameter. At each end of the body was a journal about eighteen inches long and ten inches in diameter. The rolls stood east and west. At each end of the rolls was an iron frame or arch, standing north and south, called a housing. The legs of a housing were parallel and perpendicular, and about eight feet high, and about twenty-seven inches apart on the inside. Pieces of iron were cast in this opening, at right angles to the rolls. A carriage or bearing rested upon each of these. In each carriage there was an indenture or box, in the shape of a half circle, lined with brass, in which a journal or roll rested. When a roll had been placed in its proper position for use, another half circle was placed above the journal, thus forming a complete circle of brass around the journal in which it revolved when the rolls were in operation. When a roll was to be put in position it was carried to its place by a crane

to which a chain was attached and wrapped around
the roll. The housings were not far enough apart to
permit the roll to be lowered directly into its place.
Hence it was necessary to raise one end of the roll and
lower the other, and to insert the journal at one end
into its place, and then lower the other. There were
at the east housing, at least, set screws in a pit back
of the housing, by which, when a roll was in place the
carriage was moved close to the body of the roll, so
that the roll when in operation would have only a very
slight play of perhaps a quarter of an inch. By the aid
of these set screws the east carriage could be moved
west two or three inches, and conversely if these
screws were not set, a sufficient force applied to the
west side of that carriage would cause it to slide two
or three inches east of the position it occupied when
the rolls were in operation. The east end of the roll in
question had been the lower, and the journal had
partly, but not wholly, entered its proper place. The
west end of the rolls was several inches higher, and
had become lodged upon the edge of the west car-
riage. Appellee and others were directed to dislodge
it by use of crowbars and a chisel bar, and they tried
to do so and failed, and appellee's chisel bar and one
or two crowbars had been caught and bound between
the shoulder of the roll and some part of the housing,
and they could not be moved or taken out. The fore-
man then ordered the chain about the roll to be slack-
ened by the men operating the crane, and that was
done, and the entire weight of the roll was left rest-
ing upon its two ends. It remained some five minutes
in this tilted position. The foreman then ordered ap-
pellee and another workman to change the position of
the chain upon the roll so as to lift the east end, in
order to try thereby to force the west journal off the
edge of the carriage and into its box. The chain was
so changed. Appellee's proof is to the effect that after
that change had been made, and before the men in
charge of the crane had again tightened the chain, the

foreman ordered appellee to take hold of his bar, so bound and held by the weight of the roll, and that appellee stepped towards his bar for the purpose of obeying the order; that the foreman at that instant, and while the crane was still slack and not holding the roll, went into the pit east of the east housing with the wrenches with which the set screws were moved, and released the set screws, or moved them east, and thereby permitted the weight of the roll to force that carriage two or three inches east; and that this movement released the position of the west journal on the edge of the west carriage, and the roll fell, and thereby appellee's bar was flung with great force against his jaw. Appellee's proof tended to show that the chain around the center of the roll should first have been taut; and that, if that had been done, the weight of the roll would not have forced the east carriage to the east and the west end of the roll would not have fallen and thrown appellee's bar, but that the west end of the roll would have been lowered gradually. Appellee's proof also tended to show that the set screws should not have been released while the chain was loose, and also that plaintiff should not have been ordered to take hold of his bar while the chain was loose, and when the set screws were immediately to be released. The foreman testified for appellant that he did not release the set screws at that time, but that he did so before the former roll was taken out, and then left them released while the roll was being put in. Appellee contends that if so, then it was negligence for the foreman to order appellee to take hold of his bar, so pinched and held by the weight of the roll, when the foreman knew that the set screws had been released and that because thereof and because the chain was loose the east carriage might move east and the west roll fall at any time from its position on the edge of the carriage, and that the effect of such movement would be likely to expel appellee's bar in some direction with great force. Appellant's proof tended to show that the in-

jury to appellee was due to an unforeseen and un-
avoidable accident; that appellee had been in the em-
ploy of appellant upon these rolls for many years, and
knew the dangers as well as the foreman knew them;
that the roll was put in place in the usual manner;
that the situation caused by the west end lodging upon
the edge of its carriage was not unusual; that nothing
unusual was done; that the foreman did not order ap-
pellee to take hold of this bar just before he was hurt;
and generally that appellant and its foreman were not
guilty of the negligence charged.

The several counts of the amended declaration ap-
propriately described the rolls and the housings and
the general situation, and charged that the foreman,
with knowledge of the entire situation, negligently
failed to direct the men at the crane to keep the chain
tight, so as to control the roll, by means of which the
roll fell and appellee was injured; that the foreman
negligently moved the set screws away from the car-
riage, without warning to appellee, and that appel-
lee's injury resulted therefrom; and that, knowing
that the set screws had been moved, the foreman neg-
ligently ordered appellee to take hold of his bar, and
that by means of the negligent moving of said set
screws without warning to appellee he was injured
while obeying said order. We have carefully consid-
ered the evidence, and find that there is a conflict in
the proof upon some material points. There is posi-
tive testimony introduced by plaintiff that the chain
was loose and did not support the roll; that just as the
carriage moved east, the foreman came out of the pit
with the wrenches for moving the set screws in his
hands, which had a tendency to prove that the car-
riage moved at that instant, because the set screws had
just been released; that the foreman, just before going
into the pit, ordered appellee to take hold of his bar;
and this proof, together with the other proof describ-

ing the situation, and with proof that appellee did not know the set screws had been or were to be moved, and with proof of what the foreman knew, justified a finding for appellee. In so far as this proof was disputed by proof introduced by appellant, a question of fact was presented for the jury to decide, and there was no condition of proof which would authorize us to interfere with their conclusion.

Appellant states in its brief that various specified pages of the record show exceptions by it to rulings of the court upon the admission and exclusion of testimony, and that those exceptions are well taken. This is not an argument of such exceptions, and does not require us to hunt up the rulings upon these pages and to study them to see if we can discover some reason for holding them erroneous. So far as these exceptions are elsewhere slightly argued, in appellant's brief, we find no serious and prejudicial error in the rulings.

The fifth and sixth instructions requested by appellant would have advised the jury that to entitle appellee to recover, the proof must show that appellee's injury was caused wholly by appellant's neglect. The court gave these instructions after striking out the word "wholly." This action was correct. If appellant's negligence was the efficient cause of the injury, it would be no defense that inevitable accident or inanimate things contributed to the injury. City of Joliet v. Shufeldt, 144 Ill. 403; Pullman Palace Car Co. v. Laack, 143 Ill. 242; Com. El. Co. v. Rose, 214 Ill. 545; Christy v. Elliott, 216 Ill. 31. So far as the word "wholly" in these instructions would have applied to contributory negligence by appellee, that was fully covered by the eighth and tenth instructions given for appellant. Appellant concedes that its sixteenth instruction was properly refused. We find no reversible error in the record.

The judgment is, therefore, affirmed.

*Affirmed.*