WILLIAM D. CORLEY V. BOARD OF LEVEE COMMISSIONERS
OF THE YAZOO-MISSISSIPPI DELTA.

[49 South. 266.]

1. WATERS AND WATERCOURSES. *Overflows. Damage to land. Concur-ring Causes. Levee construction.*
  Where plaintiff's land was overflowed and damaged in part be-cause of defendant's negligent construction of a levee and in part because of an excessive rainfall, an instruction wholly de-nying him a recovery was erroneous.
2. DAMAGES. *Inadequacy. New trial. Appeal.*
  A judgment may be reversed on appeal and a new trial granted because the damages awarded a plaintiff are grossly inadequate.

FROM the chancery court of, first district, Coahoma county.
HON. PERCY BELL, Chancellor.

Corley, appellant, was petitioner, plaintiff or complainant in the court below; the Board of Levee Commissioners, appellee, was defendant there.   From an inadequate decree in appellant's favor he appealed to the supreme court.

The proceeding was a special statutory one, begun by Corley, under Laws 1884, p. 140, sec. 1, for the appointment of ap-praisers to determine the damages done his lands and crops by the construction of a levee by the Board of Levee Commission-ers.   Appraisers were appointed; they made report finding that Corley was not entitled to recover anything, and thereupon Cor-ley, under the special provisions of the act above cited, appealed to the chancery court.   In that court an issue was joined be-tween the parties and the same was there tried by a jury.   Other facts are stated in the opinion of the court.

*Brewer & Watkins,* for appellant.

It is undisputed, in fact conceded, that the levee board in the construction of the new Ward Lake Levee crossed certain

well defined channels, and impeded and obstructed the drainage of Corley's land.    Not only is this shown by the evidence, but it is undeniably established by the act of the levee board in opening up and widening the Harris Bayou culvert in order to relieve appellant's lands of the water backed up over them by reason of the obstruction of the drainage by such new levee. This being true, can the levee board escape liability on the ground that the act of God, together with the act of the levee board, contributed in causing the damage? To ask the question in the light of the facts of this case is to answer it, and yet by instructions given for appellee, the jury were told that they could not award to appellant any damages unless they could say to their entire satisfaction from a preponderance of the evidence that the damage resulted solely and entirely from the construction of the levee.

It is held in *Gray v. Harris,* 107 Mass. 492, 9 Am. Rep. 61, that one who builds a dam across a stream is bound to so construct it that it will resist not only ordinary freshets but also such extraordinary floods as may be reasonably anticipated, and applying this test to the case at bar it would certainly lead us to the conclusion that one who obstructs drainage is not only bound to anticipate ordinary freshets, but must provide for such floods as may be reasonably anticipated.

In such case, will this court reverse a judgment of a lower court for a failure to award a new trial to an aggrieved party on the ground that the verdict is contrary to the law and the evidence?    That we may deal fairly and honestly with this court, that this court may see that the case at bar is surely one in which appellant is entitled to a new trial on this ground, we state the different rules that have been announced by this court and others applicable to this contention.    In *Myers v. Farrell,* 47 Miss. 281, it is held that while this court will not intrench upon the exclusive province of the jury as to the quantum of damages, yet where the record shows that the jury proceeded upon wrong premises and the court below contributed to the error and the

verdict was the result of haste, inconsiderateness or intemperance a new trial will be granted. In *Railroad Co. v. Caruth,* 51 Miss. 77, it is held that where the law furnishes no rule of measurement, the court will not disturb a verdict as excessive, unless it be shown to be so flagrantly improper as to evince possession, prejudice, partiality, or corruption. Where different minds might and probably would arrive at different results as to the damage and nothing inconsistent with an honest exercise of judgment appears, the verdict will not be disturbed. In *Dobson v. State,* 67 Miss. 330, 7 South. 327, it is held that while the trial judge should use due caution not to set his opinion against that of the jury he should not hesitate to set aside any verdict not supported by evidence. See also *Railroad Co. v. Cathey,* 70 Miss. 332. If a verdict is supported by evidence then the court cannot say the jury was unwarranted in reaching its conclusion, and it will not be disturbed, although a finding for the opposite party would have been more satisfactory to the court. *Railroad Co. v. Cantrell,* 70 Miss. 329, 12 South. 344; *Railroad Company v. Williams,* 67 Miss. 18. A verdict will not be disturbed unless it is manifest from the whole record that it is clearly wrong, or unless misdirection or other apparent error may have produced it. *McAlexander v. Puryear,* 48 Miss. 420. Where the testimony is conflicting, a verdict which is not against the clear weight of evidence will not be disturbed. *Buckingham v. Walker,* 48 Miss. 609; *Railroad Co. v. Mason,* 51 Miss. 234. Where a case has been fairly submitted to the jury and a verdict fairly rendered it ought not to be interfered with by the court, unless manifest wrong and injustice have been done, or unless the verdict is plainly not warranted by the evidence, or facts proven,—*Bosley v. Railroad Co.,* 66 L. R. A. 871; see, also, 29 Cyc. 820 to 830. These authorities are not cited as being specially applicable to the case at bar, but only to call the attention of the court to the doctrine under which appellant must clearly bring himself in order to secure a reversal of this judgment.

What are the facts of this case which warrant us in saying that this appellant clearly and unmistakably brings himself within the rule allowing a new trial? In addition to the testimony of men of unimpeachable veracity who swore positively to the damage done to appellant's lands by the construction of the new Ward Lake Levee, the admission by the levee board in opening up and widening Harris Bayou culvert that damage had been done appellant, and to the fact that it was conceded that the new levee had crossed certain well defined channels of drainage, we find the overwhelming proof, in fact the undisputed, uncontradicted proof, to be that appellant's crops of 1906 were damaged, and we challenge the testimony of a single witness of the fourteen who were examined in the court below, who denied that appellant had such crop damage in that year.     All proof on that subject is for appellant.     Appellee did not contradict this, did not deny this, and for this reason we think that appellant is entitled to again go before a jury, and secure the damages he has sustained by the violation of his rights by the levee board, as shown by the verdict of the jury in giving to him $1.00.     We have said that it was the undisputed, uncontradicted proof that appellant had suffered a crop damage in the year 1908, and to the end that the court may see that we have used this term in the light of all the facts of this record we cite the testimony of the witness used in the court below.

*F. A. Montgomery,* for appellee.
The testimony was conflicting.     The appellant claimed under the evidence of himself and other witnesses that his lands would be permanently damaged in their drainage by the building of this line of levee, and the obstruction of the flow of the water through Ward Lake culvert; and the appellee proved by the chief engineer, T. G. Dabney, and several other witnesses that the land would not be permanently damaged, but that the drainage would be better through Harris Bayou than it had been through Ward Lake culvert, and, in fact, that the drainage system would be

improved materially by the system of drainage now established for the upper Ward Lake Basin, particularly the land of the appellant, draining through Harris Bayou.

The jury went to the premises and personally inspected and viewed the land themselves.

The appellant also claimed that he was damaged by the loss of crops on the lands in the basin in the fall of 1906 and spring of 1907 by the accumulation of rain water on his lands and the proof shows that considerable of his crops of 1906 did remain ungathered on account of rain water on his lands, and the proof shows that considerable portions of his crops of 1907 were materially retarded for the same reason, but the testimony shows that, commencing early with the fall of 1906 and extending late in the spring of 1907, the section of the country in which the appellant's land lies was visited by the most tremendous rain fall that has ever fallen in that country. A totally unprecedented and unexpected rain fall, greater than had ever fallen before, and that the loss of appellant's crop in the fall of 1906 and spring of 1907 was due to this great and unprecedented rain fall, the drainage being then as good as it had been before.

Argued orally by *Earl Brewer*, for appellant, and by *F. A. Montgomery*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The jury in this case found that the plaintiff was entitled to recover, and yet, having thus fixed the liability, awarded him only $1 for his damages. The only question, therefore, on this record, in this attitude of the case, practically, is whether the damages were sufficient. Without going into the testimony in detail as to the kind of damages, it is enough to say that on the testimony in the record there was abundant proof of damages sustained to the crop of 1906 to an amount of $1,000 or more. The amount found by the jury, to wit, $1, is absurd, in view of the testimony.

We concur in so much of the finding of the jury as declines to award the plaintiff any damages for any permanent injury to his land. There was quite sufficient evidence, which the jury doubtless believed, that his lands were not permanently damaged at all by the new system of drainage, but rather improved. But the evidence does show, and shows with sufficient clearness, considerable damage, the amount to be fixed by the jury, sustained in the destruction or injury of his crops for the year, 1906. It is shown that there was an unprecedented rainfall in that year, and, to sum up shortly, the result of the evidence in the case is that the water was ponded up over the plaintiff's land to a much greater depth than it would otherwise have been, because of this unprecedented rainfall, but that there was damage, and serious damage, inflicted upon his crops, due solely to the construction of the new levee. Upon this state of the case the court instructed the jury, in substance, that unless they believed the entire damage to the crops was due solely and exclusively to the levee, and not at all to the act of God, they would find for the defendant, and refused the charge No. 1 for the plaintiff to the contrary. This appears from instructions 6, 7, and 15 given for the defendant, and No. 1 refused to the appellant. These instructions asked for the defendant are manifestly erroneous, and instruction No. 1 asked by the plaintiff should have been given. See 29 Cyc. 504; *City of Joliet v. Shufeldt,* 144 Ill. 403, 32, N. E. 969, 18 L. R. A. 750, 36 Am. St. Rep. 453. To make the matter plain, suppose the evidence showed clearly that one half the damage to the crops of 1906 was due solely to the levee, and the other half solely to the act of God, the unprecedented rainfall. Is it possible that it can be the law that the defendant could escape liability for that half of the damages due solely to the construction of the levee? Surely not. And the evidence in the case plainly shows that there was damage, and a material percentage of the damage, due alone to the construction of the levee.

It is to be noted that the evidence shows, of course, that the

new Ward Lake levee crossed and obstructed certain well-defined natural water courses, and thus impeded and interfered with the drainage of Corley's land. The very effort, shown by the testimony, to open and widen Harris Bayou culvert, for the express purpose of relieving appellant's lands of the waters backed up and ponded over them, by reason of the construction of the Ward Lake levee, is a most potent circumstance establishing the fact that the new Ward Lake levee had obstructed the flow of the water through the natural channels, and left it to be backed up over the plaintiff's lands. So far as the right or power of this court to set aside the verdict, because it is not for enough, is concerned, it is only necessary to refer to the case of *Moseley v. Jamison,* 68 Miss. 336, 8 South. 744.

Because, therefore, the verdict is grossly deficient in amount, and because of the error of the court in giving instructions refered to for the defendant, and refusing instruction No. 1 for the plaintiff, the judgment is reversed, and the cause remanded.