W. L. EATON, Defendant in Error, *vs.* THE MARION COUNTY COAL COMPANY, Plaintiff in Error.

*Opinion filed February 20, 1913.*

MINES—*right of action for violation of section 18 of the act of 1907 was not taken away by act of 1911.* The right of a miner to recover for a willful violation of section 18 of the Mines and Miners act of 1907 in permitting an obstruction to remain so close to the track in a hauling road as to make his place of work dangerous was not taken away by the act of 1911, even though the act of 1907 uses the words "or other unsafe conditions" and "or any dangerous conditions," whereas the act of 1911 uses the term "dangerous obstruction."

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. THOMAS M. JETT, Judge, presiding.

W. F. BUNDY, (NOLEMAN & SMITH, and DENISON & SPILLER, of counsel,) for plaintiff in error.

LOGAN B. SKIPPER, CHARLES F. DEW, and CHARLES H. HOLT, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court on a writ of *certiorari* to review a judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of Marion county in favor of plaintiff for $1100 for personal injuries. The errors assigned are, that the trial court erred in refusing to direct a verdict in favor of defendant below, in ruling on evidence and in giving and refusing instructions.

Plaintiff in error was operating a coal mine and defendant in error was one of its employees. The declaration charged the proximate cause of plaintiff's injury was the willful failure of defendant to perform the duties required of it by the statute. In substance, the declaration alleged that a track was laid the entire length of the main west entry (one of the hauling roads of the mine) on cross-ties, for the purpose of hauling cars of coal, drawn by mules, to the hoisting shaft; that along said entry was a steep incline, rendering it necessary to sprag cars being hauled over the track to control their momentum and prevent their running upon the mules; that plaintiff was an assistant driver in said mine, and that it was the duty of defendant not to permit said entry to become obstructed, narrow or dangerous; that it was the duty of defendant, through its mine manager, to inspect the mine and observe whether any dangerous or unsafe conditions existed and mark the places as notice to miners to keep out, and not to permit anyone to enter such places to work, except under the direction of the mine manager, until the dangerous conditions were made safe. The declaration further avers that the track in said main west entry, where the incline made it necessary to sprag the wheels of cars, was laid within eighteen inches of the rib, and on the opposite side the entry was so obstructed by gob, slate and other materials that the driver could not pass on that side of cars while in the discharge of his duties. It was further alleged that the entry became narrow and dangerous; that defendant willfully failed to

mark the same; that it willfully permitted plaintiff to enter and work in said entry not under the direction of the mine manager, and that while he was so engaged therein, and while endeavoring to sprag the wheels of a car, by reason of the dangerous conditions and obstructions he was caught between the car and said obstructions, and being unable to get around the car on account of the narrow and obstructed condition of the entry, he was thereby crushed and injured.

The proof shows that some considerable distance from the shaft an entry was turned off the main west entry, known as "fifth north entry." Both these entries were about twelve feet wide, and a track in the fifth north entry connected with the track in the main west entry by means of a switch. There was a down-grade in the track as it came out of the fifth north entry into the main west, and that down-grade continued from the connection of the tracks in the two entries toward and to the bottom of the shaft. Just how steep the grade was is not shown by the evidence, but it was steep enough that the wheels of cars were required to be spragged in order to control them in hauling them to the shaft. Plaintiff's duties at the time of his injury required him to stand at the place where the track from the fifth north entry connected with the track in the main west entry and sprag the wheels of cars as they came out of the fifth north entry on the track of the main west. A man named Osborne was hauling cars with a mule out of the fifth north entry, and as he came out of that entry to the incline he spragged one of the rear wheels of the car and called to plaintiff to catch the front end. Plaintiff, understanding him to mean sprag the front wheels, attempted to do so. The space in which plaintiff had to work was on the south or right-hand side of the track in the main west entry, and was from two and a half to three feet wide and from eight to ten feet long. This space then narrowed at the east end by reason of the close proximity of the track to the rib, so that there were only six or seven inches

between the side of the car and the rib.     Plaintiff stooped over to sprag the front wheels and found they were solid wheels and could not be spragged.     He says he then realized that Osborne intended him to jump on the front end of the car and he started to straighten up for the purpose of doing so, but by that time the car had reached the narrow space and he was caught and crushed.     The evidence shows plaintiff was in his working place.     He could not have performed his duties from the north or left-hand side of the track, because that side of the track was obstructed by piling gob, slate and other material from the track, sloping upwards almost or quite to the roof.     It cannot be said, as a matter of law, that the negligence charged in the declaration was not the proximate cause of the injury.     (*City of Joliet* v. *Shufeldt,* 144 Ill. 403.)     On the merits of the case we think the trial court properly submitted it to the jury.

It is further insisted that the suit was based on section 18 of the Mines and Miners act of 1899, as amended in 1907, and that by the general revision of said act in 1911 the provisions of section 18, upon which the suit was based, were repealed, and that under the authority of *Holcomb* v. *Boynton,* 151 Ill. 294, and *Vance* v. *Rankin,* 194 id. 625, the right of action was destroyed and the judgment must be reversed.     Paragraph (*a*) of section 18 of the act of 1907 (Laws of 1907, p. 387,) required the mine examiner to "inspect all places where men are expected to pass or to work and observe whether there are any recent falls or obstructions in rooms or roadways, or accumulations of gas or other unsafe conditions."     Paragraph (*b*) required the mine examiner, when he found in the working places an accumulation of gas, recent falls, "or any dangerous conditions," to place a mark thereat as notice to all men to keep out.     The duties of the mine examiner with respect to inspection of the mine and noting its condition are found in section 21 of the act of 1911.     (Laws of

1911, p. 388.) Paragraph 1 of that section makes it the duty of the examiner to examine the underground workings of the mine within twelve hours preceding every day on which the mine is to be operated. Paragraph 4 makes it his duty "to inspect all places where men are required in the performance of their duties to pass or to work, and to observe whether there are any recent falls or dangerous roof or accumulations of gas or dangerous obstructions in rooms or roadways." Paragraph 6 makes it the duty of the examiner, "when working places are discovered in which there are recent falls or dangerous roof or dangerous obstruction, to place a conspicuous mark or sign thereat as notice to all men to keep out." The act of 1907 uses the words "or other unsafe conditions," "or any dangerous conditions," while the act of 1911 uses the term "dangerous obstruction." Dangerous conditions might exist from other causes than obstructions, but an obstruction may make a dangerous condition, and undoubtedly that is the character of obstructions meant by the language used in the act of 1911. The declaration in this case is based upon the theory that obstructions which rendered the mine dangerous were permitted in violation of the statute, and whatever might be the effect of the late act upon cases that might be imagined arising under the former statute, the act of 1911 did not take away the right of action in this case. *People* v. *Zito,* 237 Ill. 434.

We have examined the errors assigned as to the rulings of the court in the admission of testimony and in giving and refusing instructions and are satisfied that no reversible error was committed in either respect. We fully agree with the opinion of the Appellate Court in the treatment of these questions, and it would serve no useful purpose to enter upon a detailed discussion of them.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*