## Alice Bankwitz, Appellee, v. Northwestern Elevated Railroad Company, Appellant.

### Gen. No. 17,823.

1. CARRIERS, § 364*—*liability to passenger falling through open space between car and station platform.* Elevated railroad stopping its cars at a platform where it is dangerous for passengers to alight, by reason of an open space between a car and the platform,

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

*held* liable for injuries sustained by a passenger falling through such open space while attempting to alight.

2. CARRIERS, § 347*—*proximate cause.* Failure of elevated railroad company to provide barriers under its platform at side of track to prevent a passenger falling from track platform to the ground is negligence contributing to the injury of a passenger who falls through an open space between car and platform to the track and thence to the ground, if the facts show that the company ought to have foreseen and guarded against such an accident.

3. CARRIERS, § 480*—*when question of negligence is for jury.* Whether failure of an elevated company to provide barriers under its station platform at side of track is negligence, contributing to the injury of a passenger who falls from platform to ground, is a question for the jury.

4. CARRIERS, § 464*—*when evidence not relevant to the issue.* Evidence offered by carrier tending to show want of negligence in the method of constructing station platform, not admissible when declaration does not allege negligence in the construction.

5. CARRIERS, § 455*—*when amended count does not state new cause of action.* Where an original count avers negligence in the construction and operation of defendant's train and platform, such count when amended by omitting the charge of negligence in the construction does not state a new cause of action.

6. DAMAGES, § 115*—*when excessive.* Verdict for twenty thousand dollars for personal injuries, *held* excessive and on condition of remittitur reduced to thirteen thousand dollars where the earning capacity of plaintiff, a young woman, did not exceed five and one-half dollars per week and the injuries consisted of a fracture of the elbow and other serious injuries requiring a double abdominal cavity operation.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed on remittitur. Opinion filed October 9, 1913. Rehearing denied October 23, 1913.

SHERIFF, DENT, DOBYNS & FREEMAN, for appellant; ADDISON L. GARDNER, of counsel.

GEORGE D. WELLINGTON, FRANCIS X. BUSCH, DILLARD B. BAKER and FRANK A. ROCKHOLD, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

On December 11, 1908, about 6:30 P. M., appellee,

Bankwitz v. Northwestern Elevated R. Co., 182 Ill. App. 55.

then a young woman of nineteen years, was riding as a passenger in the next to the last car of a five car train going north on appellant's elevated railway on Wells street, in the city of Chicago. The car was well filled with passengers and appellee was standing in the aisle five or six feet from the rear doors. These doors were located on each side of an arched vestibule at the end of the car, were built to slide back and forth in the side of the car and were opened and closed by the guard by means of levers and air pressure. There is a station on appellant's railway at Kinzie street. In approaching the station from the south there is a slight curve in the tracks. The station platform, as originally constructed, extended north along a straight track from a point near the north end of this curve. but later, and prior to the accident to the plaintiff, the platform had been extended southward along the curve, with the edge nearest the tracks trimmed to conform to the curve in the tracks. Whenever a car was stopped opposite this south extension of the platform there was a space between the curved edge of the platform and the car, which varied in width from about four inches at the center of the side of the car to probably eight or nine inches in width opposite the doors above described. The station platform was about three inches below the level of the vestibule floor. When the train in which appellee was riding stopped at the Kinzie street station, the fourth and fifth cars stopped opposite the curved edge of the south extension of the station platform. The guard opened the doors to let off and take on passengers. Several passengers entered and others alighted. Appellee moved towards the door, intending to step to the platform and there await the coming of a more convenient or less crowded train. The guard did not see her and turned the lever to close the door. As the door was closing she stepped across the threshold of the door and fell between the car and the platform to the tracks and from there to the ground, twenty-three feet below the platform.

There was some evidence to the effect that the platform was not well lighted at the place of the accident, and some to the effect that appellee was struck by the closing door just before she fell. There was also evidence to the effect that there was no railing or other barrier under the platform at the side of the tracks to prevent her from falling from the tracks to the ground. The trial resulted in a verdict of twenty thousand dollars, and from a judgment entered thereon, the defendant appeals.

The first count of the declaration, as originally filed, alleged, in substance, that the defendant, in violation of its duty to provide a safe place for passengers to alight from its train, and to stop the train at such place, so negligently constructed and operated its train and platform that the train "was stopped in such a position that the door leading out of the car in which plaintiff was riding was stopped alongside of defendant's certain temporary and narrow platform;" that the door was only partly opened and that the platform was overcrowded; that when the plaintiff in the exercise of due care, attempted to step out of the door on to said platform she stepped into a space between the station platform and the car platform and fell to the ground. This count was amended upon the trial by striking out the word "constructed" and by striking out the statements that the door was only partly open and that the platform was overcrowded.

The gist of the negligence charged in the second count is the failure on defendant's part to have sufficient light on the station platform, and the negligence charged in the third count is the careless closing of the car door while the plaintiff was getting off. The fourth count was discontinued. The fifth count charges negligence in failing to have any railing or other means of protection under the platform near the tracks, to prevent the plaintiff from falling thence to the ground.

It is urged at great length and with much force that

the evidence is insufficient to justify a recovery under any count in the declaration, and in support of this contention the evidence pertaining to each count is set forth in detail in the argument of appellant's counsel. In so far as the contention thus made involves the determination of matters of fact, the rule is that the verdict must be sustained unless it is clearly and manifestly contrary to the preponderance of the evidence. The issues made by the second and third counts, and the plea of the general issue, involve only the determination of pure questions of fact, and after a careful study of the evidence as to the negligence charged in those counts, we find ourselves unable to say that the verdict is manifestly contrary to the weight of the evidence. As to the fifth count, it is contended that by no process of reasoning can it be concluded that the negligence charged in that count was a proximate cause of the injury to the plaintiff, but that the fall of the plaintiff through an unprotected space at the side of the tracks, after she had fallen to the tracks, was a result, rather than a cause, of the accident. If, as was claimed by the defendant, the plaintiff's fall to the tracks was caused not by anything the defendant did or omitted to do with reference to its platform and car, but solely by the crowding of other passengers upon the platform, whereby she was pushed off the platform after having stepped safely out of the car, then the question would arise, whether the defendant's duty to the plaintiff as one of its passengers required it to anticipate and provide reasonable safeguards against the consequences of such a fall, and if so, whether the defendant's failure to provide any means of preventing such consequences was a contributing negligent cause of the injury sustained by the plaintiff. It is evidently upon the theory that this question must be answered in the affirmative that the fifth count was framed and filed in this case.

In *City of Joliet v. Shufeldt,* 144 Ill. 403, the plain-

tiff was riding in a buggy in a public street when the horse became unmanageable and ran away. By reason of a defective condition in the street the buggy collided with a stone wall and the plaintiff was thrown out and injured. It was contended that the defect in the street was not the proximate cause of the injury, but the Court held that "if a plaintiff, while observing due care for his personal safety, was injured by the combined result of an accident, and the negligence of a city, or village, and without such negligence the injury would not have occurred, the city or village will be held liable, although the accident be the primary cause of the injury, if the consequences could with common prudence and sagacity have been foreseen and provided against." This ruling was followed in a very similar case in *City of Rock Falls v. Wells,* 169 Ill. 224. The same principle was applied in *Village of Carterville v. Cook,* 129 Ill. 152, where a boy passing along a public sidewalk was inadvertently or negligently jostled or pushed from the sidewalk by another boy, at a point where the sidewalk was elevated some six feet from the ground and was unprotected by any railing or other guard. The principle of these cases has also been approved and applied in other than city cases. *Armour v. Golkowska,* 202 Ill. 144; *Siegel, Cooper & Co. v. Trcka,* 218 Ill. 559; *Elgin, A. & S. Traction Co. v. Wilson,* 217 Ill. 47; *Illinois Cent. R. Co. v. Siler,* 229 Ill. 390. In *Armour v. Golkowska, supra,* it is said (p. 149) : "In *City of Joliet v. Shufeldt,* 144 Ill. 403, we deduced from the authorities the general doctrine that it was not a defense to an action for injuries occurring by reason of the negligent act of the defendant that the negligence of a third person or an inevitable accident or an inanimate thing contributed to cause the injury to the plaintiff, if the negligence of the defendant was an efficient cause and without which the injury would not have occurred." Upon the authority of these cases, if it was true in point of fact, as alleged in the fifth count of the declaration, that the

plaintiff, without fault on her part, fell from the platform to the tracks and, because of the lack of a railing or other barrier at that point, unavoidably fell thence to the ground, while the defendant's failure to provide such a railing or barrier would not be the primary cause of the injury to the plaintiff, yet it would be an efficient contributing cause, for which the defendant would be liable, if the defendant ought to have foreseen and guarded against such an accident to one of its passengers. Whether such were the facts was a question for the jury to determine from all the evidence; and upon that question the evidence is such that we think the jury were justified in finding in favor of the plaintiff under the fifth count if no other. We are unable to appreciate the force of the argument made by appellant's counsel upon this point in their reply brief to the effect that the moment of time intervening between the plaintiff's fall from the platform and her fall from the tracks was such a lapse of time as to show that the negligent failure of the defendant to provide a barrier did not "concur" or "operate immediately" with the original act or accident in causing the injury complained of.

To the plaintiff's first count as amended defendant interposed a plea of the statute of limitations and the court sustained a demurrer to the plea. The ruling of the court in this respect is assigned as error, upon the theory that the amended count states a different cause of action from that stated in the original count. We think the demurrer was properly sustained. It is true that the original count charges negligence in construction *and* operation, while the amended count omits the charge of negligence in construction; but we do not think the amended count therefore states a different cause of action. Under the original count a recovery could have been sustained without any proof of negligent construction. Proof of negligent operation alone, in the manner and under the circumstances therein stated, would have been sufficient. The

same is true of the amended count. The original count also stated, as facts, that the platform was overcrowded, that the door was only partly opened, and that there was a space between the car platform and the station platform at the point where the car was stopped and the door opened. The negligence specified, however, was not the mere existence of any or all of these facts, but the negligent act of defendant in stopping its train at a point where it was unsafe for the plaintiff to alight because of the facts thus stated. It was not essential to a recovery upon the original count that plaintiff should prove the existence of all three of these facts. Proof of one of them, coupled with proof of circumstances showing that such fact made it dangerous to stop the train where it was stopped, followed, of course, by proof of resulting injury to the plaintiff without her fault, would have been sufficient. The amended count struck out the averment as to the two facts not proved, leaving the one proved fact as to the existence of a dangerous space where the car stopped. The averments thus stricken were averments of additional but not essential facts in the statement of the cause of action. The amendments did not, in our opinion, have the effect of stating a new or different cause of action, but merely restated, in a different form, the same cause of action stated in the original count.

It is also urged that the court committed serious error prejudicial to the defendant in refusing to admit evidence offered by defendant tending to prove that the curve in the tracks was made necessary by the physical conditions and limitations at and near the Kinzie street station; that the platform was extended because the increase in traffic required it, and was extended south because there was no room to extend it to the north, and that no other or different method of construction of either the platform or the tracks was feasible or reasonably practicable under the circumstances. None of the counts in the declaration as

amended contains any averment of negligence in the *construction* of defendant's tracks or platform, and therefore the offered evidence was immaterial and irrevelant. If all the evidence thus offered had been admitted, and if, when admitted, it left no room to doubt that the platform and tracks were constructed in accordance with the latest and most approved principles of engineering science, applied with the utmost care and skill to the physical conditions there present, the defendant would not thereby have been relieved in any degree from liability for an injury caused by the negligent operation of its trains. Counsel insist that the existence of the nine inch space, through which the plaintiff fell, was a necessary consequence of the method of construction adopted. This contention overlooks the obvious fact that the mere construction of the curve did not create that space. Before there could be any such space a car must be brought up and stopped on the curve opposite the curved portion of the platform. The act of placing a car in that position, and thereby creating a space of that width for passengers to step over in entering or leaving the car, is not a matter of construction but of operation or management. Counsel admit in their brief that "the curve in the tracks ended just at the south end of the main platform," and the map offered in evidence by the defendant shows that north of that point the tracks are straight. Hence, if the car on which plaintiff was riding had been stopped a few feet further north there would have been no such space as eight or nine inches to step over, and in all probability the accident would not have occurred. So also, if the car door had not been opened when opposite the curved part of the platform, but passengers had been required to go forward in the train to a door opening upon the straight part of the platform, the accident would not have happened. The neglect of the defendant to take such ordinary precautions as these to prevent injury to its passengers would be action-

able even though the construction of the curves was perfect and shown to be absolutely necessary.

Other alleged errors in the exclusion of offered evidence and in admitting evidence are assigned. While some of the evidence offered might perhaps have been admitted without error, most of it was properly ruled out as immaterial or irrelevant, and the exclusion of the remainder was not such error as to require a reversal of the judgment. We think the rebuttal evidence was properly admitted, under all the circumstances. As to the alleged fainting fit of the plaintiff while on the stand the bill of exceptions shows that the trial judge saw nothing of it, and evidently he was not impressed with the view that a continuance was necessary. There is nothing in the record to warrant us in taking a different view.

Complaint is made of the giving and refusal of instructions. The defendant offered thirty-five instructions, of which the court marked fifteen "given" and twenty "refused." The court also gave several offered by the plaintiff. Every instruction given and refused is criticised by counsel, and the action of the court as to each is assigned as error. We have considered the criticisms and objections of counsel and deem it sufficient to say that we think the jury were fully and fairly instructed in accordance with the views we have already expressed, and that no reversible error was committed.

It is also urged that the amount awarded as damages is excessive. This error, we think, is well assigned. When the plaintiff was picked up after her fall she was taken in a dazed and semi-unconscious condition to a nearby drug store, and soon after to a hospital, where it was found that in addition to the shock resulting from the fall she had received a deep cut over one of the eyebrows, a fracture of the external condyle of the left arm and a number of bruises and abrasions in different parts of the body. Her injuries were dressed, the fractured elbow placed in a

cast and she was put to bed.  For several days she complained of pains in the abdomen, and on the third day the doctors (there were several of them), becoming alarmed at a sudden increase in the patient's respiration and a slight rise in temperature, concluded that an operation was necessary to arrest the "developing peritonitis" indicated by these symptoms.  A laparotomy was performed and the whole interior of the abdominal cavity examined.  Some of the doctors testified that inflammation was found; others that nothing abnormal was found save a slight redness of the parts.  An incision was then made into the cavity from below, and a small quantity, about four ounces, of bloody serum was found and removed. "After the operation," said one of the doctors, "the patient made a rather uneventful recovery, very much to our surprise."  The plaintiff remained in the hospital three months, but was able to be up and around during the last month.  She then returned to her home, where she assisted, to some extent, in the housework, though she testified that if she worked one day she was obliged to rest the next day.  She claims that thereafter she suffered from pains in the abdomen, headaches and nervousness.  About two years after the accident, digital examinations, made by the same doctors and others, were made and evidences found of adhesions and displacement of the womb and left ovary.  On the trial these witnesses gave their opinions that the plaintiff was suffering from neurasthenia which could only be relieved by another operation. Upon the question whether these subsequent conditions were attributable to the accident or not, the medical experts disagreed.  Opinions on both sides of this question were submitted to the jury, and this evidence is in a state of hopeless conflict.  There was so much of this kind of evidence that it is quite probable the jury thought that if they believed the plaintiff's witnesses she was entitled to all she claimed, which was

twenty thousand dollars. The measure of damages in these cases is fair compensation for the injuries sustained. There were no circumstances justifying the allowance of punitive damages, and yet we cannot escape the conclusion that the damages awarded are more than compensatory. It was shown that the plaintiff never earned more than five dollars and a half a week. Six thousand dollars, invested at the legal rate of interest, would return an income of more than that amount. The doctors' bills, loss of time, etc., could not, under the evidence, exceed two thousand dollars. If to these liberal estimates be added the further sum of five thousand dollars to compensate the plaintiff for such other damages as she has sustained, an amount is reached which is fully as large as the evidence warrants from any reasonable point of view.

The error in this respect, however, is one that may be cured by a remittitur. If, therefore, the plaintiff, within ten days from the date of the filing of this opinion, will remit the sum of seven thousand dollars, the judgment will be affirmed for the remainder, thirteen thousand dollars. Otherwise, the judgment will be reversed and the cause remanded.

*Affirmed on remittitur.*